[Civ. No. 5738. Fourth Dist. Jan. 17, 1958.]

Guardianship of the Person and Estate of WILLIAM C. TALBOT, an Incompetent Person. CLARENDELL M. TALBOT, Appellant, v. LYLE NEWCOMER et al., Respondents.

Richard M. Marsh and Nada Novakovich for Appellant.

Florian Boyd and Lyle Newcomber, in pro. per., for Respondents.

BARNARD, P. J.—This is an appeal by the wife of the incompetent from a judgment awarding her a monthly sum for her support and maintenance, and attorneys fees in this proceeding.

The appellant and the incompetent were married in October, 1952, and lived together less than a year and a half. No community property was acquired during the marriage and there were no children. The appellant had been married twice before, and had a daughter by a prior marriage. Prior to her marriage to the incompetent she had been a waitress with an income of $6.00 a day plus tips. During the marriage they lived on a 212-acre ranch in Nevada, and Mr. Talbot conveyed a half interest in this ranch to the appellant. They separated in April, 1954, and the appellant has since lived in a house on the ranch. Mr. Talbot brought an action for divorce in Nevada in July, 1954. By a court order in that action he was required to pay $450 a month for the support of his wife, and certain attorney's fees. That action was dismissed in March, 1956, at the request of the defendant wife. On May 29, 1956, the wife brought an action

for separate maintenance in Nevada against the incompetent and his guardians, and secured a judgment for support money and attorney's fees, but personal service was never had on the incompetent or his guardians.

On June 24, 1955, Talbot was declared an incompetent by the Superior Court of Riverside County and the respondents were appointed guardians of his estate. The inventory and appraisement showed the value of the estate to be $260,392. Shortly after their appointment the guardians were authorized by the court to borrow $30,000 from a bank to take care of obligations, including about $8,000 for bills incurred by the incompetent prior to the time the guardians were appointed; and they sold the incompetent's home and bought one worth half as much for his use. The first annual account, approved by the court on August 10, 1956, showed that the estate then had assets of $242,113, and that there was $17,500 due on the $30,000 bank loan. Some of the securities of the estate had been pledged to secure that bank loan and some $20,000 of other securities had been tied up by a court order to secure payments to the three children of the incompetent by a prior marriage.

On January 15, 1957, the appellant filed a petition for family allowance and attorney's fees, alleging that she was entitled to support from the ward's estate, and wholly dependent thereon for such support; that she was indebted in the sum of $7,450 for past due obligations incurred since March, 1956; and that she was further obligated in the sum of $25,000 to Miss Nada Novakovich, an attorney in Nevada, for legal services previously rendered in connection with her efforts to secure support and maintenance from the incompetent and his estate. The prayer was for an allowance out of the estate of $4,000 per month for her support; for $7,450 for past due bills; for $25,000 for attorney's fees previously incurred; and for a further allowance of attorney's fees and court costs in this proceeding.

After a trial, the court made findings of fact and conclusions of law covering the material facts. Among other things, the court found that the appellant is the owner of a one-half interest in this ranch in Nevada consisting of 212 acres, of which 200 acres are under irrigation; that this half interest is worth in excess of $30,000 and was given to the appellant by the incompetent, and she paid no consideration therefor; that there is an encumbrance of $7,000 against this ranch; that the appellant resides on said ranch rent-free, receives one-half of any rental therefrom, and has received

all income from eggs on the ranch until she sold or butchered the poultry; that the appellant had been paid by the incompetent or from his estate $9,100 between April, 1954 and March, 1956, when the divorce action in Nevada was dismissed; that the incompetent has paid all expenses, taxes and insurance on said ranch amounting to $9,107, and has paid the further sum of $2,109 upon the encumbrance and the appellant has paid nothing on said taxes, insurance or encumbrances; that in 1955 the appellant traded in a 1954 car, the title to which was in the incompetent, on a 1955 new model car without the knowledge or authority of the incompetent or the guardians; that the past due bills alleged by the appellant were incurred after the appointment of the guardians and without the knowledge or consent of the incompetent or of the guardians; that the appellant employed Miss Novakovich as her attorney in 1954 and said attorney's services were rendered in connection with proceedings in the State of Nevada; that neither the incompetent nor the guardians had authorized or consented to the employment of this attorney or agreed to pay $25,000 or any other sum; that in January, 1956, this attorney was paid $2,500 by the guardians; that there is presently pending in Nevada a separate maintenance action brought by this appellant in which she secured a judgment in February, 1957, for her support and maintenance and for attorney's fees; that it is not true that the estate of the incompetent is able to pay $4,000 a month for the support of the appellant from income; that it is not true that the incompetent has refused to pay anything to appellant but on the other hand the guardians on behalf of the incompetent have offered to give the appellant the remaining half of the Nevada ranch and also a substantial sum in cash; that the appellant is entitled to $350 a month until further order of court for her support and maintenance; and that her attorneys, including Miss Novakovich who was permitted to appear in this case although not admitted to the bar in California, are entitled to $1,000 as attorneys' fees in this proceeding. Judgment was entered accordingly and this appeal followed.

The appellant contends that under section 1502 of the Probate Code the guardian of an estate must apply the income, as far as necessary, to the comfortable and suitable support of the ward and his family; that she is the wife of the incompetent and entitled to be supported by the estate; that the uncontradicted evidence shows that her minimum

requirement for a comfortable and suitable support is $13,180 per year; that she cannot live comfortably and suitably on any lesser sum; that she is destitute and wholly dependent upon the estate for her support; that she owes $7,450 for bills incurred for her support; that she owes $25,000 to Miss Novakovich for legal services rendered and necessarily incurred; that she cannot live comfortably or suitably until these bills are paid; that no divorce or separate maintenance action is pending and she does not have judgment *in personam* in Nevada against the incompetent or the guardians of his estate; that while the wife's necessities are a prerequisite in a divorce case this is not a divorce case, although a necessity does exist; that the ward of this estate has raised the appellant to a different station in life, in which she should be maintained; that the ward of the estate and the guardians have placed her in a position where she was forced to bring legal action in order to obtain comfortable and suitable support, which she has not received since March, 1956; that the attorneys' fees and bills incurred by her were thus incurred as the result of the action of the ward and guardians; that as long as she is the wife of the incompetent she is entitled to be supported by the estate according to his station in life, and the ward and his children should not be permitted to live in a higher station in life; that the estate of the ward is well able to pay $13,180 a year for her support, and if the income is insufficient section 1502 provides that the property may be sold or mortgaged to provide comfortable and suitable support for the wife; that sections 137.3 and 137.5 of the Civil Code provide that an award for past legal services can now be made in separate maintenance actions and in divorce actions; and that the court erred in failing to allow her $13,180 per year for her support, $7,450 for past due obligations, $25,000 for past services of Miss Novakovich, and in failing to make an adequate allowance for her attorneys in presenting her petition for family allowance.

The meaning of the provision in section 1502 of the Probate Code that the guardian of an estate shall apply the income "as far as may be necessary, to the comfortable and suitable support, maintenance and education of the ward and his family, if any," insofar as here applicable, has not been judicially determined as far as we are aware. It seems reasonable that this provision was intended to have much the same meaning as that of somewhat similar provisions applicable in certain other proceedings. In other words,

that the matter of necessity for an allowance, the needs of the applicant and the ability of the estate to pay, must be considered by the court as well as the surrounding circumstances, and that the matter of fixing the amount that should be allowed is one that must necessarily rest largely in the sound discretion of the trial court. ██ The words "comfortable and suitable support" would clearly seem to mean a support that is suitable in view of all of the existing circumstances, and not necessarily a support which might be considered suitable in accordance with traditional Hollywood or Las Vegas standards. ██ This support provision seems intended for the benefit of the ward and his family, if any. The incompetent had children by a prior marriage to whom he was obligated by court order. ██ As far as the appellant is concerned, the family relationship had been broken up long before the ward was declared incompetent, and the existing situation was one of the circumstances that could well be considered by the court. Prior to their separation the ward had given the appellant real property worth between $30,000 and $35,000 which she still owns, from which she has received considerable income. From the time of their separation in April, 1954 to March, 1956, when the divorce action in Nevada was dismissed at the appellant's request, she had been paid $9,100 in cash and the ward or his estate had already paid her Nevada attorney $2,850 and had paid $9,107 for expenses and taxes on the ranch and $2,109 on the encumbrance. After the payments under the Nevada court order stopped in March, 1956, the appellant incurred bills without the knowledge or authority of the guardians for further attorney's fees in the sum of $25,000, and within 10 months incurred other bills in the amount of $7,450. The latter amount included $1,712 for clothes, $1,419 in trading a 1954 automobile for a 1955 model, loans amounting to $513, and $388 for a television set. She then brought this proceeding in this state seeking to have these bills paid by the estate and asking a further order awarding her $4,000 a month for her support, although she filed an affidavit in this proceeding alleging that her "minimum necessary monthly family" expenses were $640. She contends on this appeal that the judgment should be modified by allowing her the sum of $13,180 a year for her support, and by allowing her $32,450 to pay the bills she has incurred.

With respect to the estate's ability to pay, the record shows that the assets of the estate amounted to about $242,000 and

that $17,500 of the bank loan was still unpaid, leaving a real balance of about $225,000. The record also shows that the average annual gross income of the estate is about $30,000; that the estate is obligated by a prior court order to pay about $10,000 a year to the three minor children of the incompetent by a prior marriage, and also to keep in force a $50,000 life insurance policy for their benefit; that the income taxes for the estate amount to over $9,000 a year; that there are further large obligations for the payment of interest, taxes, insurance, repairs and medical services for the children and for the ward; and that there will necessarily be large expenses in handling this involved guardianship proceeding. Among other things the estate was involved in five or six other forms of litigation in addition to those with this appellant. The ward was 36 years old and it may well be that the guardianship proceeding would last for many years. A mere mathematical computation discloses that at best there could not be more than $600 or $700 a month available for the comfortable and suitable support and care of the ward, and even that amount will be reduced by the $350 a month allowed to the appellant by the court. The appellant argues that section 1502 permits the guardians to sell or mortgage the assets of the guardianship estate. Not only does the section provide that this *may* be done, which involves the court's consideration of the surrounding circumstances, but the record shows that most of the estate's income comes from trusts previously established for the benefit of the ward and which would not appear from the record to be salable. Moreover, as the trial court pointed out, if the capital of the estate should be invaded in accordance with the appellant's ideas and request the estate would be entirely eaten up in a matter of three or four years.

As to the needs of the appellant the record shows that during the marriage she was given real property worth between $30,000 and $35,000 which she still owns with a right to one half of the income from the ranch. She admitted on the stand that the guardians had offered to give her the other half of the Nevada ranch and $5,000 in cash. While she received $9,100 for her living expenses during the two years from April, 1954 to March, 1956, she claims to have incurred other unpaid bills during the last 10 months of that period amounting to $7,450. The only justification offered for this scale of living, exclusive of any rent, is that the marriage had raised her to a new station in life. It should not be overlooked that living expenses for only one person are here in-

volved, and not support for the average family. Support for the major part of the ward's family was already being furnished by the guardians pursuant to a prior court order. There was no evidence that the amounts spent prior to March, 1956, were still necessary, and no satisfactory evidence showing that even $640 a month was now required for appellant's comfortable living, and the supposed change in her "station in life" is not controlling as to what is now "suitable" under the existing conditions. The appellant's own testimony clearly discloses why it was not accepted at full face value by the trial court. There is no evidence in the record showing that she lived on any such scale as she now demands during the time that she and the ward lived together. The only evidence as to that is that the ward gave her a mink coat when they were married, that he later gave her a mink stole, and that they lived during that time in a house on this ranch in Nevada which she stated is so dilapidated and out of repair that since their separation she has at times been forced to stay with friends for several days at a time.

As to the $7,450 of bills previously incurred by the appellant, it would seem that it was intended by section 1502 to provide that expenditures for support which were made by the guardian are the ones to be allowed, if approved by the court, and not that a member of the family may incur bills at will, without authorization from anyone, and later compel payment thereof. Assuming that attorney's fees may be a part of the support thus provided for, as the appellant contends, this should be confined to fees in connection with such an application for support and not extend to such fees in connection with other matters and proceedings. The respondents contend that there is no statutory authority for the allowance of attorneys' fees to the appellant in this proceeding. The questions raised in this connection need not be considered as they did not appeal from that portion of the judgment.

The amounts to be allowed under the application here made were not only matters within the court's discretion, but it was the duty of the court to exercise care in protecting the interests of the estate and all concerned therein, and in doing justice to the ward and those to whom the ward was and would be obligated as well as to the appellant. In view of the circumstances shown by the evidence and the record as a whole we feel that the amounts allowed to the appellant by the trial court were quite liberal. In any event,

the allowance was reasonable under the showing made in this proceeding and no abuse of discretion appears.

The judgment is affirmed.

Mussell, J., and Waite, J. pro tem.,* concurred.

A petition for a rehearing was denied February 10, 1958, and appellant's petition for a hearing by the Supreme Court was denied March 12, 1958.

*Assigned by Chairman of Judicial Council.